# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHARLES WILLIAM LANDRUM (#227691)**                **CIVIL ACTION**

**VERSUS**                                                          **NO. 19-668-BAJ-EWD**

**JEFF LANDRY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 29, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHARLES WILLIAM LANDRUM (#227691)**　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　**NO. 19-668-BAJ-EWD**

**JEFF LANDRY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("habeas petition"), filed by Petitioner Charles William Landrum ("Landrum").[1] It is recommended that Landrum's habeas petition be denied as the claims asserted are without merit. There is no need for oral argument or for an evidentiary hearing.

## I.    PROCEDURAL HISTORY

On August 27, 2012, Petitioner was charged with a Bill of Information in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for felony operating a vehicle while intoxicated: fourth offense.[2] After a jury trial in October of 2015, Petitioner was convicted as charged.[3] On March 16, 2016, Petitioner was sentenced to twenty-five years imprisonment, consecutive to any other pending sentence.[4]

Petitioner filed a direct appeal to the Louisiana First Circuit Court of Appeal ("First Circuit"). His conviction and sentence were affirmed by the First Circuit on February 16, 2018.[5]

---

[1] R. Docs. 1, 3. Landrum sent correspondence and documents to this Court that were received on September 30, 2019. The court issued a Deficiency Notice that Landrum needed to file his habeas petition on an approved form and pay the filing fee or a motion to proceed in forma pauperis by October 25, 2019. Landrum, who is representing himself, timely complied with the Deficiency Notice so that R. Docs 1 and 3 are read together as his habeas petition.

[2] R. Doc. 10-2, pp. 53-54. The Bill of Information was amended on October 14, 2015 to felony operating a vehicle while intoxicated: fourth or subsequent offense. R. Doc. 10-1, p. 4.

[3] R. Doc. 10-1, p. 15; R. Doc. 10-4, p. 14.

[4] R. Doc. 10-5, pp. 83-88. Petitioner was subject to a parole revocation of twelve years for a prior fourth offense DWI, resulting in a total incarceration period of thirty-seven years. *See*, R. Doc. 10, pp. 48-49.

[5] R. Doc. 10, pp. 1-22; *State v. Landrum*, 2017-0307 (La.App. 1 Cir. 2/16/18), 2018 WL 913161, *writ denied*, 2017-1783 (La. 5/25/18), 243 So.3d 566.

On May 25, 2018, the Louisiana Supreme Court denied Petitioner's petition for a writ of certiorari.[6]

Petitioner did not pursue post-conviction relief.[7]

On or about September 30, 2019, Petitioner filed his habeas application in this Court, asserting the following claims for relief: (1) prosecutorial misconduct for failure to disclose evidence, (2) violation of the statute of limitations to institute trial, (3) denial of the right to self-representation, and (4) constitutionally deficient jury instruction regarding reasonable doubt.[8]

## II.    FACTUAL BACKGROUND

The facts, as accurately summarized in the decision of the First Circuit, are as follows:

On July 13, 2012, Myrtle Watts, a clerk at the Circle K on Hooper Road in Baton Rouge, was working an overnight shift when a male customer, [Landrum], attempted to purchase an alcoholic beverage and pay for gasoline. [Landrum's] credit card was initially declined at the pump, and again at the counter. After his card was declined at the counter, [Landrum] walked to the ATM located at the back of the store. Watts noticed that [Landrum] smelled of alcohol at the time and walked "uneven." [Landrum] briefly exited the store before reentering and going back and forth to the ATM machine. He ultimately exited, reentered his vehicle, and sped away with the nozzle of the gas pump still connected to his vehicle, causing sparks of fire on the road. Watts immediately called the police and reported the incident.

Corporal Jeffrey Norton of the East Baton Rouge Parish Sheriff's Office was on patrol at the time, responding to an unrelated incident. He made contact with [Landrum] at approximately 12:30 a.m., on Sullivan Road. He observed the gas nozzle flapping in the wind, hanging out of the side of [Landrum's] vehicle, a green Jeep Grand Cherokee. [Landrum] turned into a Chase Bank parking lot without using a turn signal. As Corporal Norton followed [Landrum] into the Chase Bank parking lot, he received the dispatch regarding someone driving away with a gas nozzle from the Circle K. [Landrum] and his vehicle fit the description provided in the dispatch. [Landrum] parked his vehicle, approached the ATM by foot, and remained in the ATM vestibule for less than five minutes. Corporal Norton called out to [Landrum] as he walked back toward his vehicle. After Corporal Norton brought [Landrum's] attention to the dangling gas nuzzle and began to question him, [Landrum] removed the gas nozzle and placed it in his backseat and walked

---

[6] *State v. Landrum*, 2017-1783 (La. 5/25/18), 243 So.3d 566 (Mem.).
[7] The record reflects that Petitioner attempted to file an application for post-conviction relief ("PCR") at some point (R. Doc. 10-1, pp. 31-38) but he submitted a letter to the clerk of the trial court requesting to withdraw his PCR application on August 3, 2016. R. Doc. 10, p. 53.
[8] R. Docs. 1 & 3.

to the driver's door of his vehicle. As the officer continued his attempt to question [Landrum], [Landrum] suddenly fled on foot.

Corporal Norton gave chase and apprehended [Landrum], who became winded and fell down to the ground in the parking lot of a shopping center within the vicinity. [Landrum] had a strong odor of alcohol, glassy red eyes, and slurred speech, and walked off-balance. After being advised of his *Miranda*[9] rights, [Landrum] declined field sobriety testing, and stated that he had only drank a couple of beers earlier that day.[10] [Landrum] was transported to the central substation where he was further advised of his rights and submitted to a chemical test of his breath. A sample he provided, at approximately 1:45 a.m., indicated his blood-alcohol level was 0.124.[11]

## III.    TIMELINESS

Pursuant to 28 U.S.C. § 2244(d), a prisoner in state custody has one year to file a federal habeas corpus petition.  The one-year period begins to run on the date judgment becomes final through the conclusion of direct review or through the expiration of the time to seek direct review.[12] A properly filed application for state habeas relief or other collateral review tolls this time period.[13] After a petitioner has proceeded through all stages of direct appellate review in the state courts, the period of direct review also includes the petitioner's right to seek discretionary review before the United States Supreme Court.  As a result, after a ruling by the state's highest court on direct appeal, a petitioner's judgment becomes final when the United States Supreme Court issues a decision denying discretionary review or, if no application for review is filed, at the conclusion of the ninety-day time period for seeking review at the Supreme Court.[14]

---

[9] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).
[10] At trial, [Landrum] testified similar to his pretrial statement that he had a couple of beers that night before taking a nap and awaking to go to the ATM. However, in his trial testimony he further indicated that he drank hard liquor while in the Chase Bank parking lot. He denied being offered a field sobriety test.
[11] *State v. Landrum*, 2018 WL 913161, at **1-2.
[12] 28 U.S.C. § 2244(d)(1)(A).
[13] *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019), citing 28 U.S.C. § 2244(d)(2).
[14] *Roberts v. Cockrell,* 319 F.3d 690, 693 (5th Cir. 2003).

Respondents attempt to persuade the Court that Landrum's conviction became final on May 7, 2018 because Landrum failed to file a petition for writ of certiorari with the Louisiana Supreme Court after the First Circuit affirmed his conviction on direct appeal.[15] Landrum represents in his habeas petition that he did appeal his conviction to the Louisiana Supreme Court.[16] As the Louisiana Supreme Court issued a writ denial in Landrum's case on May 25, 2018, it appears that Landrum did, in fact, appeal his conviction to the Louisiana Supreme Court.[17]

Respondents suggest that the Louisiana Supreme Court's May 25, 2018 writ denial pertains not to Landrum's direct appeal, but to a separate writ of mandamus he filed on October 24, 2017.[18] While the docket numbers on the writ denial and the petition for writ of mandamus match, other evidence suggests that the Louisiana Supreme Court's May 25, 2018 decision was a denial of the application for certiorari review of the First Circuit's opinion affirming Landrum's conviction. First, the writ denial itself says that Landrum applied for a "writ of certiorari," not a writ of mandamus. The heading of the writ denial also references the case number of the First Circuit's opinion affirming Landrum's conviction.[19] Most significantly, the First Circuit has twice cited the May 25, 2018 writ denial as denying review of its opinion affirming Landrum's conviction on direct appeal.[20] Accordingly, Landrum's conviction became final on August 24, 2018, which was

---

[15] R. Doc. 7, p. 2; R. Doc. 18, p. 7.

[16] R. Doc. 3, p. 3.

[17] *State v. Landrum*, 243 So.3d 566.

[18] R. Doc. 9-1, pp. 1-9. R. Doc. 8, p. 2. Respondents cite the First Circuit denial of a motion for rehearing in their brief when calculating timeliness (R. Doc. 18, p. 7, fn. 5) but fail to submit the First Circuit motion for rehearing and First Circuit order denying rehearing. Respondents were ordered to provide this Court with the complete record in this case, and, if Respondents contend Landrum's claims are "successive, untimely, procedurally defaulted, unexhausted, and/or there has been prejudicial delay under Rule 9(a)," they were ordered to file "any and all evidentiary materials to support such contention …" R. Doc. 4. The Court was able in this case to determine the merits of the Respondents' timeliness argument, notwithstanding their failure to fully comply with the Court's Order. In the future, Respondents may be subject to a show cause order why sanctions should not issue for failing to provide the Court with the necessary documents in support of their contentions.

[19] Docket No. 2017-KA-0307.

[20] *State v. Lee*, 2018-0541 (La.App. 1 Cir. 11/7/18), 2018 WL 5832212, at *7; *State v. Patterson*, 2018-1731 (La.App. 1 Cir. 7/3/19), 285 So.3d 1154, 1162, writ granted in part on other grounds, *State v. Patterson*, 2020-00003 (La. 9/27/21), 323 So.3d 861 (Mem.).

the end of the ninety day period in which he could have sought further review with the Supreme Court.

Respondents argue that Landum's habeas petition is untimely even if the Court uses August 24, 2018 as the date the conviction became final because Landrum filed his petition at the earliest on September 27, 2019.[21] However, the record reflects that Landrum sent a letter to this Court before the statute of limitations expired, received on April 24, 2019.[22] The heading on the letter included the docket numbers from Landrum's cases at the trial court, First Circuit, and Louisiana Supreme Court. The body of the letter stated that Landrum was at the Steve Hoyle program and was scheduled to be released on August 16, 2019. It also stated, "Charles Landrum, I write in reference to an extension to file with this court…"[23] This Court responded to Landrum's letter by returning it, advising "[t]he documents are returned to you for filing in the proper court…Enclosures: documents submitted to the wrong court."[24]

Landrum subsequently filed a pleading with the United States Court of Appeals for the Fifth Circuit on May 20, 2019, seeking relief from his conviction.[25] Landrum advised the Court that the Fifth Circuit never told him that he filed with the wrong court. When Landrum called the Fifth Circuit in the fall of 2019 to check on the status of his case, he discovered the error. Thereafter, Landrum submitted his petition to this Court on or about September 27, 2019.[26]

Under these facts, Landrum's habeas petition is timely. Landrum submitted a substantially similar pleading to the Fifth Circuit on May 20, 2019. The Fifth Circuit could have transferred that pleading to this Court pursuant to 28 U.S.C. § 1631, the purpose of which is to aid litigants who

---

[21] R. Doc. 18, pp. 7-8.
[22] R. Doc. 1, pp. 4-5.
[23] *Id.*
[24] R. Doc. 1, p. 3.
[25] R. Doc. 1, pp. 9-31.
[26] R. Doc. 17, p. 1; R. Doc. 1, p. 31.

are confused about the proper forum for review and to prevent any prejudice from such confusion when the interests of justice are served.[27] Accordingly, May 20, 2019, the date Landrum filed his habeas claims with the Fifth Circuit, will be treated as the filing date in this Court for purposes of the statute of limitations.[28]

## IV.  PROCEDURAL DEFAULT

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined.  The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.[29]  As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts.[30]  A district court may notice on its own motion a petitioner's failure to exhaust state court remedies.[31]

A habeas petitioner who has failed to properly present a federal constitutional claim to the state courts may nonetheless be considered to have "technically exhausted" his state remedies if

---

[27] *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 792-93 (5th Cir. 2021). *See also*, *Rodriguez-Roman v. I.N.S.,* 98 F.3d 416 (9th Cir. 1996); *United States v. McNeill*, 523 Fed.Appx. 979, 982-84 (4th Cir. 2013) (If the petition could have been transferred under 28 U.S.C. § 1631, then treating the initial filing as the basis for calculating the statute of limitations for timeliness is proper). Respondents argue that 28 U.S.C. § 1631 does not apply because Landrum captioned his pleading "criminal appeal." R. Doc. 18, p. 9. The body of Landrum's *pro se* filing with the Fifth Circuit is a challenge to his state court conviction because of federal constitutional violations. The caption is not dispositive of whether the matter was transferrable under the statute. *Pro se* pleadings are to be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all pleadings must be construed to do justice. Fed. R. Civ. Proc. 8(e).  *Pro se* actions should be transferred under § 1631 when there is risk the action will be barred by a statute of limitations. *See Franco,* 3 F.4th at 799 ("We accordingly conclude that § 1631, which was specifically designed to protect federal litigants from the forfeiture that could result from a statute of limitations running after a plaintiff's mistakenly filing an action in a court that lacks jurisdiction when the interests of justice so demand ...."); *Froudi v. U.S.*, 22 Cl.Ct. 290, 298-99 (1991); *Baker v. Bensalz Productions, Inc.,* 478 F. Supp.3d 618 (S.D. Ohio Apr. 28, 2020); *Arora v. Buckhead Family Dentistry, Inc.*, 285 F.Supp.3d 190, 199-200 (D.D.C. Jan. 8, 2018).

[28] Landrum may also be entitled to the benefit of equitable tolling based on the return of his original/timely filing by the Clerk of this Court in April 2019.

[29] *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir.1980).

[30] *Rose v. Lundy,* 455 U.S. 509, 510 (1982).

[31] *McGee v. Estelle,* 722 F.2d 1206, 1214 (5th Cir.1984).

the state courts are no longer available for a review of the claim because of a procedural bar.[32] A claim is considered to be "technically exhausted" when state relief is no longer procedurally available in connection with the claim, without regard to whether the claim was actually exhausted by presentation before the state courts.[33]  In such instance, where a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in the state court.[34]  Federal review of the claim is then precluded unless the petitioner can show that the applicable procedural rule is not regularly followed and "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[35]

Respondents contend that Landrum's claims are unexhausted because he did not raise those claims with the Louisiana Supreme Court on direct appeal. However, according to the state court record,[36] all four claims were presented to the First Circuit and the Louisiana Supreme Court summarily denied certiorari. On the face of the record, Petitioner has exhausted his habeas claims.

---

[32] *See Busby v. Dretke,* 359 F.3d 708, 724 (5th Cir.2004).

[33] *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991).

[34] *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *See also Magouirk v. Phillips,* 144 F.3d 348 (5th Cir. 1998).

[35] *Jones v. Jones,* 163 F.3d 285, 296 (5th Cir. 1998); *Nobles,* 127 F.3d at 423 n. 33; *Williams v. Cain,* 125 F.3d 269, 276 (5th Cir. 1997).

[36] Respondent argues, "[b]ased on review of the documents submitted under Louisiana Supreme Court Docket No. 17 KO 1783, petitioner did not seek review in the Louisiana Supreme Court addressing the substance of the pro se claims he raised on appeal." R. Doc. 8, p. 12.  The state court record filed by Respondents does not contain Petitioner's briefs on direct appeal to the First Circuit or the Louisiana Supreme Court. However, the First Circuit opinion affirming Landrum's conviction and sentence states, Landrum's counseled brief assigned error to the "denial of the counseled motion to reconsider sentence, and to the constitutionality of the sentence," and that Landrum's pro se brief "claims error regarding the timeliness of the commencement of trial, the denial of his right to act as co-counsel, the failure of the State to produce exculpatory evidence, and the constitutionality of the trial court's jury instruction on reasonable doubt."  R. Doc. 10, p. 3; *State v. Landrum*, 2018 WL 913161, at *1.

## V.  STANDARD OF REVIEW

The standard of substantive review in this Court is set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[37] Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[38] Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[39] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[40]

---

[37] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[38] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[39] *Id*. *See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").
[40] 28 U.S.C. § 2254(e)(1).

## VI.    SUBSTANTIVE REVIEW

### A.    Claim 1 – Prosecutorial Misconduct for Failure to Disclose Evidence

In Claim 1, Landrum contends that the prosecution "hid" the video of his arrest at Chase

Bank, which shows that he was never pulled over while driving a car.[41] Landrum raised this issue

on direct appeal as *pro se* Error No. 3:

> In pro se assignment of error number three, [Landrum] claims that the police and
> prosecution failed to disclose or produce material exculpatory evidence consisting
> of surveillance video footage ... He further argues that surveillance footage at Chase
> Bank could have supported his claim that while he was drinking, and as he was
> approached by the police, he was outside of his vehicle. Thus, he claims that a
> traffic stop did not occur. The defendant contends that during a status hearing on
> May 7, 2014, assistant district attorney Sandra Ribes admitted to viewing
> surveillance footage of the Chase Bank parking lot. He concludes that he was
> denied the right to a fair trial and that confidence in the jury's verdict was
> undermined as a result of the discovery violation.[42]

After reviewing the applicable law, the First Circuit made the following factual findings and legal

conclusions:

> Herein, at an October 15, 2015 hearing, [Landrum] (as opposed to counsel)
> addressed the trial court, claiming that assistant district attorney Sandra
> Ribes previously indicated in open court on September 22, 2014, that she viewed video
> footage from the scene. [Landrum] now on appeal asserts that on May 7, 2014, in
> open court Ribes admitted to viewing the video. The minutes for both dates indicate
> that the matter was continued on those dates, ex proprio motu by the trial court in
> May, and upon the motion of the defense counsel in September. At the October 15,
> 2015 hearing, after [Landrum] made the claim regarding the State purportedly
> viewing the video footage, the assistant district attorney present at the time,
> Michelle Lacoste, interjected in an attempt to make the record clear. As Lacoste
> noted, the defense had been diligently trying to obtain the video, as several motions
> for subpoena duces tecum had been filed (for Walgreens and Chase Bank). Lacoste
> denied having a copy of the video, further noting that the videos obtained in
> response to the subpoenas went to the defense and were not provided to the State in
> reciprocal discovery. At that point, [Landrum] and defense counsel informed the
> trial court that the prior appointed defense counsel included the incorrect timeframe
> in the subpoenas. The defense counsel further noted that videos were nonetheless
> sent directly to the trial court for the timeframe requested, that those videos were

---

[41] R. Doc. 3, p. 5.
[42] *State v. Landrum*, 2018 WL 913161, at *4.

subsequently forwarded to the defense, and that the defense subsequently made requests for subpoenas to obtain the correct surveillance footage.

Because the record does not show that the State ever had custody or control over the surveillance videotapes at issue, it had no obligation to produce them. We find that the defendant has failed to show that the State suppressed any exculpatory evidence in this case. We further note that even if a delay in discovery or a **Brady** violation did occur, it would not constitute reversible error without actual prejudice to the defendant's case. [State v.] **Garrick**, [2003-0137 (La. 4/14/04),] 870 So.2d [990], at 993 [(per curiam)]; **State v. Gross**, 2016-1168 (La. App. 1st Cir. 4/18/17), 218 So.3d 1089, 1094. A reviewing court in Louisiana should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. *See* La. Code Crim. P. art. 921. In this case, [Landrum] has failed to show how he was prejudiced or denied a fair trial. Moreover, the record does not reflect any manner in which [Landrum] might have been lulled into a misapprehension of the strength of the state's case. [Landrum] has failed to raise any substantial claim of suppression of evidence by the State that would create a reasonable doubt which would otherwise not exist in the context of the whole record. Pro se assignment of error number three lacks merit.[43]

"[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[44] To establish a *Brady*[45] violation, a petitioner is required to prove that (1) the prosecution actually suppressed evidence, (2) the suppressed evidence was favorable to him, and (3) the suppressed evidence is material.[46] "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[47] Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[48]

---

[43] *Id.,* at *6 (internal citations omitted) (emphasis in original).
[44] *Banks v. Dretke,* 540 U.S. 668, 691(2004), quoting *Brady,* 373 U.S. at 87.
[45] *Brady v. Maryland*, 373 U.S. 83 (1963), requires the State to produce evidence that is favorable to the accused where it is material to guilt or punishment.
[46] *See Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995).
[47] *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)
[48] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

"A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[49] But if the suppressed evidence was discoverable through due diligence, a petitioner's *Brady* claim necessarily fails.[50] A claim under *Brady* is a mixed question of law and fact.[51] Under the applicable standard of review, this Court must determine if the state court's decision denying relief was contrary to, or involved an unreasonable application of, Supreme Court precedent.

This Court is bound by the First's Circuit's finding of fact that the prosecution was never in possession of the referenced video.[52] The First Circuit's conclusion that Landrum's *Brady* claim is without merit was neither contrary to, nor an unreasonable application of, federal law. Landrum has failed to show that the video exists or contains favorable and material evidence. Even if Landrum could make this showing, his claim would fail because the video was equally accessible to him with the exercise of due diligence by subpoena to Chase Bank. Claim 1 is without merit and should be dismissed.

### B.  Claim 2 – Failure to Institute Trial within Statute of Limitations

In Claim 2, Landrum contends that the state exceeded the maximum allowable timeframe of two years to institute his trial pursuant to La. Code Crim. P. art. 578(A)(2).[53] Landrum raised this claim with the First Circuit in *pro se* error No. 1.[54] The First Circuit only addressed Louisiana law in its opinion. Respondents argue that the claim should be dismissed because Landrum has not asserted a federal constitutional claim in his federal habeas petition.[55]

---

[49] *Id.*; *see also United States v. Sipe*, 388 F.3d 471, 485 (5th Cir. 2004).
[50] *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011).
[51] *Higgins v. Cain,* 434 Fed.Appx. 405, 406 (5th Cir. 2011), citing *Banks v. Thaler,* 583 F.3d 295, 309 (5th Cir. 2009).
[52] 28 U.S.C. § 2254 (e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct.")
[53] R. Doc. 3, p. 7.
[54] *State v. Landrum*, 2018 WL 913161, at *4.
[55] R. Doc. 18, p. 19.

"Federal habeas corpus relief does not lie for errors of state law."[56] However, because Respondents did not provide the Court with Landrum's brief to the First Circuit, it is unclear whether he alleged a federal constitutional violation in his *pro se* assignment of error. Furthermore, Landrum's March 25, 2015 motion for a speedy trial, filed with the trial court, specifically invoked the Sixth Amendment and his right under the United States Constitution to a speedy trial.[57] Accordingly, Claim 2 will be evaluated as a Sixth Amendment speedy trial claim.

The Sixth Amendment, as applied to the states through the Fourteenth Amendment, provides that for "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[58] A state court may be deemed to have resolved a federal speedy trial claim on the merits even when it mentions "only the similar state rules and authorities."[59] Violation of the petitioner's right to a speedy trial requires dismissal of the indictment.[60]

Whether a criminal defendant has been deprived of his right to a speedy trial is a mixed question of law and fact, which is reviewed under the deferential standard of 28 U.S.C. § 2254(d)(1). Accordingly, Landrum is entitled to relief only if the state court's rejection of his speedy trial claim resulted in a decision that was contrary to, or involved an objectively unreasonable application of, clearly established federal law as articulated in the decisions of the Supreme Court.[61]

The Supreme Court prescribes several factors to be considered when evaluating a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of

---

[56] *Estelle v. McGuire*, 502 U.S. 62 (1991).
[57] R. Doc. 10-3, pp. 21-22.
[58] *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012).
[59] *Id.*, at 216–17.
[60] *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008).
[61] *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (citations omitted).

his right to speedy trial, and (4) prejudice to the defendant.[62] None of these factors is either necessary or sufficient to find a speedy trial violation; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant."[63] The speedy trial inquiry therefore involves a "difficult and sensitive" balancing of these factors under the particular circumstances of a given case.[64]

### 1.   Length of delay

Under the first *Barker* factor, the court conducts a two-part inquiry. First, the delay must be long enough to give rise to a presumption of prejudice.  A threshold showing of presumptively prejudicial delay is required and is met "somewhere around the one-year mark."[65] Once this presumption is met, the court then determines "the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis." "A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused."[66]

Landrum was arrested on July 13, 2012.[67] His trial did not start until October 2015. A thirty-nine month delay between arrest and the beginning of proceedings was long enough to create a presumption of prejudice and sufficiently over the one-year minimum to weigh in Landrum's favor.

### 2.   Reasons for delay

The weight assigned to the next factor depends on the reasons offered. At one extreme, a deliberate delay to disadvantage the defense is weighed heavily against the State. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant

---

[62] *Barker v. Wingo*, 407 U.S. 514 (1972).
[63] *Id.*
[64] *Id.*
[65] *Amos*, 646 F.3d at 206, citing *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003).
[66] *Amos*, 646 F.3d at 206 (citations omitted).
[67] R. Doc. 10-2, pp. 75-76.

weigh in favor of the State. Between these extremes fall unexplained or negligent delays, which weigh against the State, "but not heavily."[68] Here, the First Circuit found a significant part of the delay was attributable to defense motions and a December 2014 joint motion for continuance.[69] The record reflects that defense motions for continuance resulted in a year and a half of delay.[70] Accordingly, this factor does not weigh in Landrum's favor.

### 3. *Defendant's assertion of his right to a speedy trial*

The third factor asks whether the defendant "diligently asserted his speedy trial right."[71] It is the defendant's burden "to alert the government of his grievances."[72] Defendants must "appropriately assert their speedy trial rights, as viewed in light of their other conduct."[73] Thus, this factor may weigh against a defendant when he repeatedly moves for dismissal on speedy trial grounds but behaves in a way that undermines his professed desire for a speedy trial.[74] This factor hinges on the "frequency and forcefulness" of the defendant's invocation of his right to a speedy trial.[75]

---

[68] *Goodrum*, supra, 547 F.3d at 258, quoting *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) (footnotes and internal citations omitted).

[69] *State v. Landrum*, 2018 WL 913161, at *3.

[70] December 13, 2012 (3 months) (R. Doc. 10-2, p. 39); March 25, 2013 (2 months) (R. Doc. 10-2, p. 40); May 20, 2013 (6 months) (R. Doc. 10-2, p. 40); January 13, 2014 (4 months) (R. Doc. 10-2, p. 41); and September 22, 2014 (3 months) (10-2, p. 42). The record also reflects that Landrum's complaints against his appointed attorneys resulted in delays. On May 4, 2015, Landrum's public defender, Susan Hebert, sought to withdraw as counsel of record. Hebert advised the trial court that Landrum had filed a disciplinary committee complaint against her, and she believed that she had a conflict of interest. Hebert also advised the trial court that Landrum had filed complaints against his two previous appointed counsel. Hebert stated that the complaint against her was dismissed but Landrum had appealed and expressed her belief that Landrum was filing complaints to create a conflict of interest. The trial court refused to allow Hebert to withdraw because it would create more delays. R. Doc. 10-1, pp. 55-56; *see also State v. Landrum*, 2018 WL 913161, fn.5.

[71] *Amos*, 646 F.3d at 207, quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007).

[72] *Id.*, quoting *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993)).

[73] *Laws v. Stephens*, 536 Fed.Appx. 409, 413 (5th Cir. 2013), quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (cleaned up).

[74] *Id.*

[75] *Goodrum*, 547 F.3d at 249.

The record reflects that Landrum first asserted his desire to be tried promptly when he filed a pro se Motion for Speedy Trial on March 25, 2015,[76] nearly three years after his arrest. Landrum was tried within seven months of asserting the right. The delay in raising his speedy trial concern weighs strongly against Landrum.[77]

### 4. Actual prejudice

Under the final factor, Landrum must show that he suffered actual prejudice. To this end, the court looks to three interests that the speedy trial right was designed to protect: (a) prevention of oppressive pretrial incarceration; (b) minimization of anxiety and concern of the accused; and (c) limitation of the possibility that the defense will be impaired.[78] "The most serious concern is the last, because the inability of a defendant to adequately to prepare his case skews the fairness of the entire system."[79]

Landrum offered no grounds for actual prejudice in his habeas petition.[80] He points to no specific testimony, evidence or opportunities for the defense that were lost because of the delay. The general possibility of prejudice from the passage of time is insufficient to support a claim that speedy trial rights were violated.[81] A speedy trial claim must fail when there is a lack of actual prejudice.[82]

---

[76] R. Doc. 10-3, pp. 21-22. Landrum also filed a pro se motion to dismiss on August 21, 2015, arguing denial of his speedy trial right. R. Doc. 10-3, pp. 100-104; *see also* R. Doc. 10-1, pp. 60-67. While Landrum filed other pro se motions to quash earlier in the case, those motions were arguing that certain predicate offenses were not properly included in his charges. *See, e.g.*, R. Doc. 10, pp. 96-100; R. Doc. 10, p. 138 to R. Doc. 10-1, p. 3 (arguing that certain predicate offenses should not be included).

[77] *See Speer v. Lumpkin*, 824 Fed.Appx. 240 (5th Cir. 2020) (22-month delay weighed against defendant); *Diver*, 698 at 219 (17-month delay weighed against defendant); *Robinson*, 2 F.3d 562 (12-month delay weighed against defendant).

[78] *Laws*, 536 Fed.Appx at 414, citing *Barker*, 407 U.S. at 532.

[79] *Id.* (cleaned up).

[80] R. Doc. 3, p. 7.

[81] *Loud Hawk*, 474 U.S. at 315.

[82] *See United States. v. Hernandez*, 457 F.3d 416, 422 (5th Cir. 2006).

### 5.  *Balancing the factors*

The only factor that weighs in Landrum's favor is the length of the delay. He is, therefore, not entitled to habeas relief on his speedy trial claim.

### C.  **Claim 3 – Denial of the Right to Self-Representation**

In Claim 3, Landrum contends that he was denied the right to represent himself at trial. Landrum raised the claim as *pro se* error No. 2 on direct appeal.[83] The First Circuit dismissed the claim, finding that Landrum's request to act as co-counsel was not a clear and unequivocal assertion of his right to self-representation under the particular facts of the case:

> In the instant case, the record reflects that the trial court appointed the Office of the Public Defender to represent [Landrum] at his September 6, 2012 arraignment. [Landrum] was represented by counsel from the Public Defender's Office at every court appearance thereafter. [Landrum] filed a motion to act as co-counsel on February 27, 2015, claiming to have adequate knowledge and the full ability to establish the facts of the case, and that the only way he would receive an optimum defense was by acting as co-counsel. On the morning of the trial on October 19, 2015, out of the presence of prospective jurors and prior to voir dire, [Landrum] argued in support of his motion to represent himself.[84] [Landrum] stated that he wished to obtain surveillance footage and to prove that he consumed alcohol after arriving at the bank and did not drive while under the influence thereafter, contending that he was in the parking lot when the police first saw him. [Landrum] stated that he wanted to be able to cross-examine witnesses during the trial and present his case to the jury himself. In denying [Landrum's] request, the trial court in part stated that [Landrum's] trial counsel would cross-examine the police and the jurors would have to make the decision as to whether or not [Landrum] was driving while intoxicated, or became intoxicated while in the bank parking lot. [Landrum] did not re-urge the motion to act as co-counsel at any point during the trial. [Landrum] testified at trial, presenting to the jury his version of the facts that night.
>
> *       *       *
>
> Considering the record herein, we find no error in the trial court's denial of the defendant's motion to act as co-counsel in this case. The defendant's request to represent himself was not a clear and unequivocal assertion of the right to self-representation. The defendant did not unequivocally indicate to the trial court that

---

[83] *State v. Landrum*, 2018 WL 913161, at *3.

[84] On May 4, 2015, the trial court denied defense counsel's oral motion to withdraw based on numerous complaints filed by [Landrum] to the disciplinary committee in regard to the court-appointed attorney and the previous court-appointed attorney, all of which apparently were determined to be unfounded.

he wanted to represent himself in this prosecution without the assistance of any counsel. Instead, he requested to be allowed to act as co-counsel, in conjunction with his court-appointed attorney. As previously noted, an accused has the right to choose between the right to counsel and the right to self-representation. Furthermore, we have not found any way in which his defense was prejudiced because he did not participate as co-counsel. Therefore, the trial court did not err in denying the defendant the right to act as co-counsel under the facts and circumstances of this case. We find no merit in pro se assignment of error number two.[85]

Because whether a defendant's invocation of his right to self-representation was clear and unequivocal is dependent on the particular facts and circumstances of the case, Landrum must establish that the First Circuit's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[86] It was not.

The defendant's waiver of his right to counsel should not be inferred by the court in the absence of a clear and knowing election.[87] The record reflects that Landrum essentially requested to act as co-counsel along with his appointed attorney. The First Circuit noted that Landrum filed a motion to act as co-counsel in the trial court on February 27, 2015.[88] In that motion, Landrum stated: "The Defendant will be represented at these proceedings by a practicing attorney. It is the Defendants [sic] intention to fully cooperate with the attorney regarding the exercise of any Co-Counsel role granted by the court. Both the Defendant and the attorney naturally have the

---

[85] *Id.*, at **3-4.

[86] *Randolph v. Cain*, 412 Fed.Appx 654, 657–58 (5th Cir. 2010) (citing 28 U.S.C. § 2254(d)(2); *United States v. Long*, 597 F.3d 720, 723–24 (5th Cir.2010) (citing cases and analyzing various verbal exchanges between defendants and judges in each case to determine if right to proceed pro se was invoked); *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008); *see also Stenson v. Lambert*, 504 F.3d 873, 882–883 (9th Cir. 2007) ("We hold that the [state court's] holding that [defendant's] request at trial [to proceed pro se ] was 'not unequivocal,' ... was not 'based on an unreasonable determination of the facts.' " (citing 28 U.S.C. § 2254(d)(2)) (internal citation omitted)); *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000), citing *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir. 1994) for proposition that "the question of whether a defendant invoked his right to self-representation in an unequivocal manner is a question of fact."); *Fields v. Murray*, 49 F.3d 1024, 1032 (4th Cir.1995) (holding the question "whether a defendant effectively invoked his right to self-representation" is "one of fact"), citing *Cain v. Peters*, 972 F.2d 748, 749 (7th Cir.1992)). "Under AEDPA [, 28 U.S.C. § 2254(e)(1)], a state court's factual findings are presumed to be correct unless the habeas petitioner rebuts the presumption through clear and convincing evidence." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (internal quotation marks and citations omitted).)

[87] *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982).

[88] *See* R. Doc. 10-3, pp. 19-20.

successful defense of this matter uppermost in mind.  Nothing regarding the defense of this matter can or will be done unless Defendant and attorney are coordinated and in agreement."[89] During the hearing, on the day of trial, defense counsel advised the court that "Mr. Landrum wants to make a request to represent himself and dismiss counsel."[90]  In the course of his discussion with the trial court about this request, when asked by defense counsel if he wants to represent himself, Landrum states: "I would like to have access to speak to two witnesses that's going to show up, and to present my case to the jury on my own, because I don't feel like this is going to be brought up and it needs to be brought out."[91] The trial judge explained that those witnesses would be cross-examined by Landrum's counsel.[92]  Later during the trial, Landrum again stated to the trial court that he wanted to "be able to address the witnesses" and that "the state and federal law says that I can act as co-counsel."[93]

As noted by the First Circuit, there is no constitutional right to the hybrid form of representation requested by Landrum.[94] Landrum has not established that he clearly and unequivocally waived his right to self-representation based on the facts of this case. His motion before trial to act as "co-counsel," his statement on the morning of trial that he wanted to question only two witnesses, and the fact there is no information in the record that Landrum ever expressly

---

[89] *Id.*, at p. 20.
[90] R. Doc. 10-1, p. 74.
[91] R. Doc. 10-1, p. 75.
[92] R. Doc. 10-1, p. 78.
[93] R. Doc. 10-4, p. 147.
[94] *See McKaskle v. Wiggins*, 465 U.S. 168, 182-83 (1984) (there is no constitutional right to hybrid representation); *United States v. Ogbonna*, 184 F.3d 447, 449 & n.1 (5th Cir. 1999) (holding the same). The Fifth Circuit has recognized the same rule applies in a wide variety of contexts. *See United States v. Sanders*, 843 F.3d 1050, 1053-54 (5th Cir. 2016) (holding a criminal defendant represented by counsel had no right to file a pro se motion challenging the validity of his plea); *Bagwell v. Dretke*, 372 F.3d 748, 752 n.6 (5th Cir. 2004) (holding a state habeas corpus applicant had no right to hybrid representation before the state court); *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978) (it is settled law that a criminal defendant has no right to hybrid representation). The same rule applies in the state courts. *Smith v. Collins*, 977 F.2d 951, 962 (5th Cir. 1992); *Neal v. Texas*, 870 F.2d 312, 315-16 (5th Cir. 1989).  Although, as noted throughout this Report, the state trial and appellate courts gave Landrum wide latitude and considered pro se motions and briefs even when Landrum was represented by counsel.

told the court that he no longer wanted representation after the trial judge told him counsel could

ask the witnesses the questions Landrum was concerned about are insufficient to show by clear

and convincing evidence that Landrum clearly and unequivocally waived the right to counsel.

Accordingly, Claim 3 is without merit and should be dismissed.

### D.   Claim 4 – Reasonable Doubt Jury Instruction

In Claim 4 Landrum contends that the trial court erred by giving a constitutionally deficient

reasonable doubt jury instruction.[95] Landrum raised this claim as *pro se* error No. 4 on direct

appeal.[96] Landrum does not provide an explanation for why he believes the jury instruction was

unconstitutional beyond, "an erroneous presumption regarding the elements of the offense that

violates the Fifth and Sixth Amendment[s]…"[97]

The First Circuit acknowledged that the "beyond a reasonable doubt standard" is a

requirement of the Due Process Clause but does not require the use of any particular words.[98] After

reviewing the instruction Landrum's jury received,[99] the First Circuit concluded,

> In the instant case, we find that the jury instruction taken as a whole,
> correctly conveyed the concept of reasonable doubt to the jury and
> did not suggest a higher degree of doubt than that required under the
> reasonable doubt standard. We conclude that a reasonable person of
> ordinary intelligence would have no difficulty in understanding the
> definition of reasonable doubt based on the jury instructions given
> in this case. Thus, we find no constitutional violation. Pro se
> assignment of error number four lacks merit.[100]

The Constitution neither prohibits States from defining "beyond a reasonable doubt" nor

requires them to do so.[101] A trial court, however, "must avoid defining reasonable doubt so as to

---

[95] R. Doc. 1, p. 19.
[96] *State v. Landrum*, 2018 WL 913161, at *6.
[97] *Id.*
[98] *Id.*, at *7.
[99] *Id.*, and *see* R. Doc. 10-5, pp. 67-68.
[100] *State v. Landrum*, 2018 WL 913161, at *8.
[101] *Victor v. Nebraska,* 511 U.S. 1, 5 (1994).

19

lead the jury to convict on a lesser showing than due process requires."[102] A petitioner must show that the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process.[103] Moreover, habeas relief based on trial error is not available unless a petitioner can establish "actual prejudice."[104]

The First Circuit noted that Landrum "has not with specificity supported his claim that the jury instruction on reasonable doubt was constitutionally deficient." Landrum has also failed to support his claim in this Court. Landrum received a standard reasonable doubt instruction from Louisiana's treatise on criminal jury instructions, which did not include any language regarding presumptions or elements of the offense.[105] Landrum has failed to show that the instruction was improper.

What Landrum really seems to be arguing in this assignment of error is not that the jury instruction on reasonable doubt was erroneous, but that, based on the facts as Landrum believes them to have occurred, there was insufficient evidence to convict him because he only drank after his vehicle was already parked at the Chase Bank, he did not have keys when found outside his vehicle, and he was not subject to a sobriety test at the site of the arrest, such that no one could establish that he drove while intoxicated.[106] "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' …

---

[102] *Id.*, at 22.
[103] *Mayabb v. Johnson,* 168 F.3d 863, 867 (5th Cir.1999), quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973).
[104] *Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993).
[105] R. Doc. 10-5, pp. 67-68.
[106] R. Doc. 1, pp. 28-29.

Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[107]

Landrum was charged with felony operating a vehicle while intoxicated: fourth or subsequent offense by amended Bill of Information.[108] The jury was instructed that, under La. R.S. 14:98(E), "the crime of operating a vehicle while intoxicated is the operation of any motor vehicle … when the following conditions exist: the operator is under the influence of alcoholic beverages or the operator's blood alcohol concentration is .08 percent or more by weight based on grams per one hundred cubic centimeters of blood."[109]  The trial court went on to explain to the jury that, "in order to find the defendant guilty as charged, you must find: one, that the defendant was operating a motor vehicle; two, that the defendant was under the influence of an alcoholic beverage and the defendant's blood alcohol concentration was .08 percent or more by weight based on grams per one hundred cubic centimeters of blood; and that the defendant previously had been convicted of operating a vehicle while intoxicated …."[110]

The Circle K store clerk, Myrtle Watts, could not identify Landrum at trial, but the prosecution pointed to other evidence to identify Landrum as the individual who drove off with the Circle K gas nozzle still in his vehicle. Watts further testified that the individual smelled of alcohol, was unsteady when walking and exhibited slurred speech.[111]  The investigating officer, Corporal Norton, also testified that he saw Landrum driving with a gas pump sticking out of his

---

[107] *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (citations omitted; emphasis in original).
[108] R. Doc. 10-1, p. 4.
[109] R. Doc. 10-5, pp. 72-73. Landrum does not appear to challenge whether the evidence was sufficient to establish the appropriate number of prior convictions for the offense of operating a motor vehicle when the operator is under the influence of alcoholic beverages.
[110] R. Doc. 10-5, p. 75.
[111] R. Doc. 10-4, pp. 115-118.

gas tank,[112] the gas pump had the Circle K logo and the car fit this description that Watts provided, Landrum attempted to flee when Corporal Norton made contact, that Landrum had a strong odor of alcohol, glassy, red eyes and slurred speech, and that Landrum initially refused a field sobriety test, but a couple of hours later Landrum agreed to a breathalyzer test and registered a .124 blood-alcohol concentration.[113]

Based on the evidence presented at trial, viewed in the light most favorable to the prosecution, Landrum has failed to establish that no rational trier of fact could have found the essential elements of operating a vehicle while intoxicated: fourth or subsequent offense, beyond a reasonable doubt.  Accordingly, Claim 4 is without merit and should be dismissed.

## VII.    CERTIFICATE OF APPEALABILITY

Should Landrum pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[114]   Although Landrum has not yet filed a Notice of Appeal in this case, the Court may address whether he would be entitled to a certificate of appealability.[115]   A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[116]  In cases where the court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[117]   In cases where the court has rejected a

---

[112] R. Doc. 10-4, p. 127.

[113] R. Doc. 10-4, pp. 128-154.

[114] 28 U.S.C. § 2253(c)(1)(A).

[115] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

[116] 28 U.S.C. § 2253(c)(2).

[117] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).

petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[118] In the instant case, reasonable jurists would not debate the denial of Landrum's habeas petition or the correctness of the procedural or substantive rulings. Accordingly, if Landrum seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## VIII. RECOMMENDATION

As his claims fail on the merits, **IT IS RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody,[119] filed by Charles William Landrum, be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 29, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[118] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).
[119] R. Docs. 1 & 3.